UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**13  CV  0040**

MARCO A. PINO,

                Plaintiff,

    vs.

L. GADWAY, ORLANDO GARCED,
C. MYERS, R. MONTGOMERY,
LLOYD NOLAN, S. RESTEY, W. STEVENS,
AND LT. TOKARZ, in their individual
capacities,

                Defendants.

13 Civ. _____ (   )

**COMPLAINT**

**JURY TRIAL DEMANDED**



### PRELIMINARY STATEMENT

    Plaintiff Marco A. Pino, through his undersigned counsel, brings this action pursuant to

42 U.S.C. § 1983 to recover damages for Defendants' violations of his rights guaranteed by the

Eighth and Fourteenth Amendments.  Defendants singled out Mr. Pino arbitrarily and assaulted

him.  Moreover, they conspired to conceal their wrongdoing and to further punish Mr. Pino by

having him placed in solitary confinement.

    The assault occurred in July 2011 at Green Haven Correctional Facility ("Green Haven").

At the time, Defendants worked as corrections personnel of various ranks at Green Haven, and

Mr. Pino was an inmate.  Before the attack, Defendant Garced trapped Mr. Pino in an isolated

hallway, ensuring no other prisoners could witness the misconduct.  On the pretext of conducting

a random search, Defendant Garced ordered Mr. Pino to stand against the wall.  But instead of

completing a pat frisk, Defendant Garced pulled Mr. Pino's legs out from underneath him.
Defendants Garced, Nolan and Restey then punched and kicked Mr. Pino for at least five
minutes. One of them smashed his knee into Mr. Pino's head. At least one Defendant also
struck Mr. Pino repeatedly with a baton as he lay bleeding on the floor. Upon information and
belief, Defendants Tokarz and Montgomery looked on during the beating. Afterwards, as
Defendants Gadway and Myers took Mr. Pino away in handcuffs, Defendant Montgomery urged
them to bend Mr. Pino's wrists and to "break his wrists if [they had] to." Though he offered no
resistance, Defendant Myers forcibly bent Mr. Pino's wrist forward, causing him to scream in
pain.

At no time before or during the attack did Mr. Pino do anything to justify the use of force
to restrain him. He did not attempt to harm Defendants, resist the search, or refuse to obey a
single order. He also did not fight back while Defendants Garced, Nolan and Restey beat him.

Because of the beating, Mr. Pino suffered numerous abrasions and bruises, lacerations
necessitating sutures, swelling and stiffness in his left wrist, and vision problems. The assault
also exacerbated a previous shoulder injury. Moreover, Plaintiff suffered extreme emotional
trauma as a result of the attack.

Upon information and belief, to hide their misdeeds, and to cause Mr. Pino to be further
punished, Defendants took three steps. First, they agreed to plant a homemade weapon at the
scene of the incident. Defendants therefore claimed to find a razor stuck into a pen on the floor
after the beating, which they suggested fell from Mr. Pino's pocket during the altercation.
However, Mr. Pino had never seen this object before.

Second, Defendants stole one of Mr. Pino's two state-issued razors from his cell. A report authored by Defendant Stevens stated that, after the incident, one razor was missing from Mr. Pino's cell. This made it appear that Mr. Pino had violated prison rules by using one of his razors to make the weapon planted by Defendant Garced.

Third, to disguise the fact that there had been no reason to use force against Mr. Pino, Defendants agreed to lie about the incident. Specifically, Defendants Garced and Montgomery claimed in their reports that while Mr. Pino had his hands against the wall, with his back to, upon information and belief, five guards in an otherwise deserted hallway, he decided to throw multiple punches at Defendant Garced. Defendants' reports alleged that force then became necessary to subdue him. In addition, Defendant Nolan's report stated that he recovered a weapon from Mr. Pino at the scene. Upon information and belief, to be certain that their stories aligned, Defendant Nolan drafted Defendant Garced's report, in addition to his own. Defendants also provided false testimony at Mr. Pino's subsequent disciplinary Superintendent's Hearing. As a result of Defendants' false reports and testimony, Mr. Pino was placed in solitary confinement.

In this way, Defendants' story appeared to explain Mr. Pino's injuries—which, according to infirmary records, did not include any abrasions to either of Plaintiff's hands despite Defendants' claims that he repeatedly punched Defendant Garced—while at the same time causing him to be punished further by Green Haven officials. Unless prison authorities believed Mr. Pino broke the rules by assaulting Defendant Garced, supposedly to prevent them from finding a contraband weapon, there would be no excuse for beating him. The planted weapon,

false behavior reports and false testimony were thus critical to the success of Defendants' conspiracy.

In sum, Defendants took malicious and sadistic actions with the intent to harm Plaintiff in violation of his Eighth Amendment right to be free of cruel and unusual punishment, and then further conspired in an effort to inflict additional punishment upon him, which in fact culminated in Plaintiff being subjected to extended confinement in segregated housing. Plaintiff brings this lawsuit seeking compensatory and punitive damages, and any other relief the Court may deem just and proper.

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3).

2. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).

## PARTIES

### Plaintiff

3. Plaintiff Marco A. Pino is currently incarcerated at Sing Sing Correctional Facility in Ossining, New York, in the care and custody of the New York State Department of Corrections and Community Supervision ("DOCCS").

4. Plaintiff was previously incarcerated at Green Haven in Stormville, New York, and in the Special Housing Unit ("SHU") at Southport Correctional Facility in Pine City, New York, in the care and custody of DOCCS.

### Defendants

4

5.    Upon information and belief, L. Gadway is a resident of New York and is employed as a Corrections Officer at Green Haven.

6.    Upon information and belief, Orlando Garced is a resident of New York and is employed as a Corrections Officer at Green Haven.

7.    Upon information and belief, C. Myers is a resident of New York and is employed as a Corrections Officer at Green Haven.

8.    Upon information and belief, R. Montgomery is a resident of New York and is employed as a Sergeant at Green Haven.

9.    Upon information and belief, Lloyd Nolan is a resident of New York and is employed as a Corrections Officer at Green Haven.

10.    Upon information and belief, S. Restey is a resident of New York and is employed as a Corrections Officer at Green Haven.

11.    Upon information and belief, W. Stevens is a resident of New York and is employed as a Corrections Officer at Green Haven.

12.    Upon information and belief, Lieutenant Tokarz is a resident of New York and is employed as a Lieutenant at Green Haven.

13.    At all relevant times herein, Defendants were acting as officials of the state of New York and under color of state law for purposes of 42 U.S.C. § 1983.

## STATEMENT OF FACTS

14.    Plaintiff was incarcerated at Green Haven from 2009 until his transfer to Southport Correctional Facility in November 2011.

15.     On July 20, 2011, while incarcerated at Green Haven, Plaintiff and other inmates were waiting to enter the prison yard for recreation.  While waiting, Defendant Garced was in a control booth near the prison yard and started motioning at the inmates.  Plaintiff did not at first understand what Defendant Garced wanted.  However, it eventually became clear to Plaintiff that Garced was singling him out and signaling to him—apparently wanting to see his identification.  Plaintiff was slow to react because he did not initially understand the meaning of Defendant Garced's gestures.  As a result, Defendant Garced glared at him as if he had done something wrong.

**Defendants Assault Plaintiff Without Provocation**

16.     The following day, July 21, 2011, at approximately 7:00 p.m., Plaintiff was returning to the H-Block housing unit after a medication run, where he received pain medication that had been prescribed to him following a recent shoulder surgery.  As Plaintiff approached the F & G corridor, he witnessed Lieutenant Tokarz and Sergeant Montgomery in the vicinity.  Plaintiff was last in line.  When Plaintiff reached the F & G corridor, Defendant Garced gave him a direct order to leave the line and approach the wall.  The rest of the inmates continued back to their cells.

17.     Defendant Garced directed Plaintiff to empty the contents of his pockets and place them on a bench.  After Plaintiff had emptied his pockets, Defendant Garced directed him to place his hands on the wall, and initiated what Plaintiff thought would be a routine, random pat frisk.  Defendant Garced began searching Plaintiff's upper body.  As this happened, Plaintiff could see two other officers approach—Defendants Nolan and Restey—one on each side of him.  When Defendant Garced reached Plaintiff's waist, he asked Plaintiff whether he had been talking

in the hallway.  Plaintiff replied that he had not.  Defendant Garced continued to search Plaintiff, and when he reached Plaintiff's legs, he grabbed him by the ankles and pulled his legs out from underneath him, causing Plaintiff to fall to the floor.

18.     As Plaintiff lay on the floor, Defendants Garced, Nolan and Restey began punching, hitting and kicking him.  In response, Plaintiff moved to protect his face with his forearms raised and his hands clasped at the top of his head.  One officer hit Plaintiff's head with his knee, and another officer repeatedly hit Plaintiff with a baton.  The assault lasted approximately five to eight minutes, before Plaintiff was placed in handcuffs.  At no time during this incident did Plaintiff attempt to fight back.

19.     While still pinned to the ground, Plaintiff witnessed Defendant Garced place a homemade weapon—comprised of a razor blade and pen—on the floor beside him.  Plaintiff had never seen this device before.

### Defendants Continue to Utilize Excessive Force After Plaintiff is Restrained

20.     Following the assault, Plaintiff was handcuffed and Defendants Gadway and Myers arrived to escort him to the medical clinic.  Despite the fact that Plaintiff already had handcuffs on, Defendant Montgomery directed Defendants Gadway and Myers to bend Plaintiff's wrists and to "break his wrists if [they had] to."  Following these instructions, Defendant Myers forcefully bent Plaintiff's wrists, while Defendant Gadway looked on, to the point that Plaintiff screamed in pain.

### Plaintiff Suffers Injuries

21.     Directly following the assault, Plaintiff was taken to the prison clinic.  Clinic personnel determined that Plaintiff needed to be transferred to an outside hospital to seek further treatment.

22.     As a result of the assault, Plaintiff sustained numerous physical injuries including: lacerations necessitating sutures; abrasions and bruises; swelling and stiffness in his left wrist; vision problems; and the exacerbation of his previous shoulder injury.

23.     Besides physical injuries, Plaintiff also suffered extreme emotional distress as a result of the attack.  Plaintiff feared for his life both during the attack and afterward, while confined in SHU.  He experienced stress and anxiety, including with respect to how the incident would affect his wife and daughter.  Plaintiff also worried that Defendants would attack him again in a similar manner.  As a result, he had difficulty sleeping through the duration of his time at Green Haven and Southport.

**Defendants Further Conspire to Exact Additional Punishment Upon Plaintiff**

24.     Following the excessive use of force incident, Defendants Garced, Restey and Nolan, with the assistance of the other named Defendants, agreed to engage in a course of action directed towards punishing Plaintiff further.  Upon information and belief, in an effort to depict Plaintiff as the instigator and attempt to justify their excessive use of force, Defendants Garced and Nolan fabricated the details of the assault in incident summaries and inmate misbehavior reports, and also provided false testimony at Plaintiff's Superintendent's Hearing.  In particular, Defendants Garced, Nolan and Restey had agreed beforehand that they would lie, and claim that Defendant Garced discovered the homemade pen weapon in Mr. Pino's pocket during the search leading Plaintiff to initiate the violence.

25.     Accordingly, Defendant Garced's summary and inmate misbehavior report stated that during the pat frisk Defendant Garced felt an unknown object in Plaintiff's right front pants

pocket, and that when he reached to recover it Plaintiff began to punch him, forcing Defendant Garced to restrain Plaintiff.

26.     Defendant Nolan also described the "recovery" of the homemade weapon, although his reports provide inconsistent accounts of the retrieval.  In Defendant Nolan's inmate misbehavior report, he stated that he found an altered state razor melted to an altered state pen on the ground underneath the Plaintiff, while his summary stated that he found the altered instrument next to the Plaintiff.

27.     Likewise, Defendant Restey's summary states that the Plaintiff was combative and details the force that Restey used, including striking Plaintiff three times with a baton, to restrain Plaintiff.  Furthermore, Defendant Restey endorsed the content of Defendant Garced's inmate misbehavior report as a witness.

28.     Upon information and belief, Defendant Nolan wrote out Defendant Garced's summary and inmate misbehavior report.  Upon information and belief, the reason Nolan did so was to make the two officers' false stories appear to be consistent.

29.     That same evening, after the incident, Defendant Montgomery ordered Defendant Stevens to search Plaintiff's cell.  Though both of Plaintiff's state-issued razors were present in his locker when he left his cell that evening, Defendant Stevens reported in an inmate misbehavior report that only one razor was present in Plaintiff's cell when he conducted the search.

30.     Upon information and belief, Defendants removed one of the two state-issued razors in Plaintiff's cell as part of an intentional scheme to suggest that Plaintiff assembled the weapon and had it on his person during the incident.  Upon information and belief, Defendant

Montgomery was aware of the decision to remove one of Plaintiff's razors from his cell, and possibly ordered the action.

31.    Plaintiff repeatedly requested that the altered state razor purportedly recovered at the scene be tested for DNA and fingerprinted, in order to prove that it did not belong to him, but his request was denied.

32.    The false misbehavior reports, which Defendants Garced, Nolan, Restey, and Stevens purport to have filed and/or endorsed on the night of the attack, July 21, 2012, were necessary to cover up Defendants' conspiracy to deprive Plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants' misbehavior reports purported to establish that Mr. Pino initiated a fight and violently resisted attempts to restrain him because he did not want them to discover his illegal weapon. Without these false reports, Defendants would have had no excuse for using any force against Mr. Pino—let alone for beating him so severely that he had to be sent to an off-site hospital for treatment.

33.    Finally, when Plaintiff was in the prison clinic following the assault, a nurse doused him with water to wash off blood prior to having photographs taken of his injuries.

34.    Upon information and belief, Defendants conspired to brutally assault Plaintiff, and to lie about it in their reports, based on nothing more than personal malice against Plaintiff and a desire to single him out. In so doing, despite the fact that each Defendant was clothed with the authority of the state and therefore acting under color of state law, Defendants' specific motivation to assault Plaintiff was based on their own personal interests, wholly separate and apart from the interests of DOCCS. Indeed, DOCCS cannot have any legitimate interest in intentionally violating a prisoner's right to be free from excessive force. Because the beating

was unwarranted, rather than in response to a genuine disturbance initiated by Plaintiff, there was no institutional purpose advanced by either the unjustified violence or the subsequent cover-up.

### Plaintiff is Confined in Segregated Housing Following the Unlawful Assault

35.     Later that evening, Plaintiff was released from St. Francis Hospital and held in an isolation room at Green Haven overnight.  The next day, July 22, 2012, Plaintiff was placed into Green Haven's Special Housing Unit ("SHU") pending a hearing on his alleged behavioral violations.  His placement in segregated housing was a direct result of Defendants' conspiracy.

36.     A few days later, on or about July 25, 2011, Plaintiff filed a grievance regarding the incident.

37.     Thereafter, beginning on or about July 27, 2011, Plaintiff had a Superintendent's Hearing, where Defendants Garced, Nolan, Restey, Montgomery, Tokarz and Stevens provided false testimony generally consistent with the false reports described in paragraphs 24-29 regarding the incident.

38.     Plaintiff filed a Notice of Intention to File a Claim in the New York State of Claims regarding the attack, which was received by the State of New York Attorney General Managing Attorney's Office on October 18, 2011.

39.     Subsequently, on or about November 7, 2011, Plaintiff was transferred from Green Haven's SHU to the SHU at Southport Correctional Facility.

### Plaintiff is Sentenced to Further Confinement in SHU as a Result of the Conspiracy

40.     Based on Defendants' conspiracy, Plaintiff was charged with violating rules regarding: assault on staff (100.11); violent conduct (104.11); refusing a direct order (106.10); creating a disturbance (104.13); possession of a weapon (113.10); possession of an altered item (113.11); and loss of State property (116.10).

41.    To address the charges contained in the inmate misbehavior reports, Plaintiff had a Superintendent's Hearing.  Plaintiff denied all the charges levied against him.  On or about August 17, 2011, at the conclusion of the hearing, Plaintiff was found not guilty of creating a disturbance but was found guilty of all the remaining charges against him.  Plaintiff appealed the outcome of the Superintendent's Hearing on or about October 11, 2011.

42.    As a result of the guilty findings in the Superintendent's Hearing, Plaintiff was sentenced to 15 months SHU, 15 months loss of packages, 15 months loss of phone, 15 months loss of commissary and 15 months loss of good time.  While confined in SHU, Plaintiff's allotted recreation time was significantly reduced.

43.    Moreover, while confined to SHU housing, Plaintiff continued to suffer emotional distress, as he experienced stress and worry at the prospect of enduring another attack by Defendants and how the incident might affect his wife and daughter.  Plaintiff had difficulty sleeping during his confinement in the SHU, causing him to request sedatives.  He also sought psychological treatment and met with doctors at both Green Haven and at Southport.

44.    After being forced to spend approximately 9 months in SHU, on or about April 20, 2012, the findings in Plaintiff's Superintendent's Hearing were administratively reversed and Plaintiff was released from this confinement.  He was then placed on detention admission hold at Southport Correctional Facility to await transfer.  Though Plaintiff has made repeated efforts to obtain information regarding the reason for the administrative reversal, DOCCS has not provided any.

## FIRST CAUSE OF ACTION AS AGAINST DEFENDANTS GARCED, RESTEY, NOLAN AND MYERS

### Excessive Use of Force

45.     Plaintiff repeats and realleges all of the allegations in paragraphs 1-44 above.

46.     Each of the Defendants listed in this claim used excessive force which was not applied in a good-faith effort to maintain or restore discipline.  Rather, Defendants acted with malicious and sadistic intent to cause harm in violation of the Eighth Amendment.

47.     Defendants' excessive use of force caused serious physical and psychological injury to Plaintiff and violated his clearly established constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983.

48.     Because Plaintiff made no attempt to engage in violent behavior, did not demonstrate or display any actions to indicate resistance to the Defendants' commands, and fully cooperated with Defendants' orders, Defendants' actions were objectively and subjectively unreasonable and unnecessary.  Furthermore, they were not applied in a good-faith effort to maintain or restore discipline, but were maliciously and sadistically intended to cause harm.

49.     Defendants thus violated Plaintiff's constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION AS AGAINST DEFENDANT MONTGOMERY
### Supervisory Liability

50.     Plaintiff repeats and realleges all of the allegations in paragraphs 1-44 above.

51.     Defendant Montgomery was personally involved and directly and affirmatively participated in the wrongs committed by Defendants Gadway and Myers by ordering the officers to handle Plaintiff in the illegal manner that they did.

52.     Defendant Montgomery is therefore liable in his capacity as supervisor, having contributed to, and caused, serious physical and psychological injury to Plaintiff.

53.     Defendant Montgomery thus violated Plaintiff's constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION AS AGAINST DEFENDANTS GARCED, NOLAN, RESTEY, MONTGOMERY, TOKARZ, GADWAY AND MYERS

### Failure to Intervene

54.     Plaintiff repeats and realleges all of the allegations in paragraphs 1-44 above.

55.     In addition to Defendants Garced, Nolan, Restey, Montgomery and Myers directly participating in the attack upon Plaintiff, each of the Defendants listed in this claim failed to intercede to prevent their fellow Defendants from perpetrating these acts, despite the opportunity to do so.  Therefore, each Defendant is liable for the failure to intervene and violating Plaintiff's constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983.

56.     Furthermore, Defendant Tokarz witnessed Defendants Garced, Restey and Nolan use excessive force against Plaintiff, and Defendant Gadway witnessed Defendant Myers use excessive force against Plaintiff.   Both Defendants Tokarz and Gadway failed to intercede to prevent their fellow Defendants from perpetrating these acts, despite the opportunity to do so. Therefore, each Defendant is liable for the failure to intervene and violating Plaintiff's constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983.

57.     As a result of Defendants' failure to intervene, Plaintiff suffered serious physical and psychological injuries.

## FOURTH CAUSE OF ACTION AS AGAINST ALL DEFENDANTS

### Conspiracy

58.     Plaintiff repeats and realleges all of the allegations in paragraphs 1-44 above.

59.     Each of the Defendants conspired to assault Plaintiff and/or to cover up the unlawful use of excessive force against Plaintiff in violation of Plaintiff's constitutional rights pursuant to the Eighth Amendment and 42 U.S.C. § 1983 by, *inter alia*, planting a weapon on his person and filing false misbehavior reports against him.

60.     As a result of Defendants' conduct, Plaintiff suffered severe physical and psychological injuries.

61.     As foreseeable consequence of the conspiracy Plaintiff was subjected to punishment and confined in punitive segregated housing for approximately 9 months.  During his time in SHU, several of Plaintiff's privileges were revoked, including, *inter alia*, the use of a phone and the ability to receive packages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully requests that judgment be granted:

a.     Declaring Defendants' conduct complained herein to be in violation of Plaintiff's rights under the Eighth Amendment;

b.     Awarding Plaintiff compensatory damages due under 42 U.S.C. § 1983;

c.     Awarding Plaintiff punitive damages due under 42 U.S.C. § 1983 as a result of Defendants' intentional, malicious or reckless actions, callous indifference to Plaintiff's well-being, and intent to cause grievous bodily harm;

d.     Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b); and

e.     Awarding such other and further relief as this Court deems necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated:  January 2, 2013

LATHAM & WATKINS LLP

Robert J. Malionek
Jason A. Kolbe
Katherine S. Boyd
Justin A. Levy

885 Third Avenue
New York, New York 10022
212.906.1200
robert.malionek@lw.com
jason.kolbe@lw.com
katherine.boyd@lw.com
justin.levy@lw.com

*Attorneys for Plaintiff*